## W. A. CLARK v. THE STATE.

### *No. 3219.  Decided November 9.*

**1. Robbery—Indictment.**—See the statement of the case for the charging part of an indictment *held* sufficient to charge robbery.

**2. Same—Evidence—Conspiracy.**—It is an established rule that the acts, conduct, and declarations of one co-conspirator subsequent to the consummation of the conspiracy, are inadmissible as evidence against another conspirator. This rule, however, can not be extended so as to exclude evidence of the subsequent finding of the fruits of the crime in the possession of one of the co-conspirators whose complicity in the perpetration of the crime has been fully established. Under this rule it was competent for the State to prove that ten days subsequent to the robbery a part of the fruits of the robbery was found in the possession of the defendant's co-conspirator. But note that though decided, this question is not properly before this court for revision, inasmuch as the defendant's objection to the proof was sustained by the trial court.

**3. Same.**—That the defendant and his co-conspirator, at the time of their examining trial, informed a witness of the place of concealment of a part of the fruits of the crime, and induced, or requested him to remove it, is a fact that the State, if within its power, could properly prove, even though the defendant and his co-conspirator were in custody at the time they gave the witness such information. But note that, as in the matter involved in the previous ruling, the testimony relied upon by the State to prove this issue was excluded upon the objection of the defendant.

**4. Practice—Evidence.**—It is no longer a question that a witness may express his opinion as to the correspondence of footprints with boots or shoes. See the opinion for a collocation and review of authorities on this question.

**5. Same—Deposition of a Deceased Witness—Certificate.**—The statutes of this State prescribe no particular form of certificate for the authentication of depositions of deceased witnesses. The certificate authenticating the deposition read in evidence on this trial is as follows: "The foregoing testimony was sworn to and subscribed before me, this October 16, 1888. J. T. Washington, J. P.," etc. *Held,* sufficient.

**6. Robbery.—Charge of the Court** correctly defines robbery if it literally copies the language of the Code.

**7. Same—Indictment.**—Conforming to the rule that a defendant can be charged in the same count with felonious acts with respect to several parties if they comprise a single transaction, the indictment in this case charged the simultaneous robbery of C. of a pistol, and of T. of money, alleging the ownership and possession of the pistol in C., and the ownership and possession of the money in T. The proof sustained the allegations of ownership and possession, and the charge of the court conformed the law to the allegations and proof. *Held,* correct.

**8. Practice—Jury Law.**—It is a matter of discretion with the trial judge to discharge or refuse to discharge a jury because they have been kept together such a time as to render it altogether improbable that they can agree; and the exercise of that discretion will be revised on appeal only when it has been manifestly abused.

**9. Same.**—Under the provisions of article 697 of the Code of Procedure, a witness who has testified upon the stand may be recalled and required to detail his testimony again to the jury as to any particular point about which the jury has disagreed, and no other. While this article does not specifically embrace depositions in writing, taken before an examining court, it must be held to authorize the re-reading to the jury of a deposition when the jury has disagreed as to the contents of the same.

**10. Same—Conspiracy—Evidence.**—It is a rule of evidence that, as between conspirators, antecedent acts and declaration of each, pending and in pursuance of the common design, and tending to throw light upon its execution or upon the motive or intent of its perpetrators, are competent evidence against each and all of them. Stated

| 28 | 189 |
| 28 | 244 |
| 28 | 519 |
| 28 | 562 |
| 28 | 583 |
| 29 | 44 |
| 29 | 263 |
| 28 | 189 |
| 30 | 483 |
| 31 | 593 |
| 28 | 189 |
| 33 | 11 |
| 28 | 189 |
| 35 | 104 |

otherwise, the rule is that when a conspiracy has been proved, the sayings and move-
ments of other conspirators before the perpetration of the crime are admissible against
the defendant, though occurring in his absence.   See the opinion for a collocation of
authorities on the subject, and for evidence held to have been properly admitted as
coming within the purview of the rule.

APPEAL from the District Court of Comanche.   Tried below before Hon.
T. H. Conner.

A term of five years in the penitentiary was the penalty assessed against
the appellant upon his conviction for robbery, under an indictment, the
charging part of which reads as follows:   "W. A. Clark   *   *   *   did
then and there, upon the persons of C. W. Churchwell and J. A. Taylor,
unlawfully, wilfully, and feloniously make an assault, and them, the said
C. W. Churchwell and J. A. Taylor, by means of said assault, and by
violence, in fear of their lives and bodily injury, then and there feloni-
ously did put, and one pistol, of the value of ten dollars, the same being
the corporeal personal property of said C. W. Churchwell, and four sil-
ver coin dollars, current money of the United States of America of the
value of four dollars; one twenty dollar bill, current money of the United
States of America of the value of twenty dollars, and a better descrip-
tion of which the grand jurors are unable to give, all of said money
being the corporeal personal property of the said J. A. Taylor, from the
possession, and against the will of them, the said C. W. Churchwell and
J. A. Taylor, then and there violently and fraudulently did take and
carry away, with the intent then and there of appropriating the said
property of the said C. W. Churchwell and J. A. Taylor, to the use and
benefit of him, the said W. A. Clark; against the peace and dignity of
the State."

The circumstances immediately attending the robbery are disclosed by
the testimony of Taylor on the stand, and that of the deceased witness
Churchwell on the examining trial, as then reduced to writing.   Taylor
testified, in substance, that he and Churchwell in their respective wagons
left their homes in Comanche County, Texas, on the morning of October
6, 1888, and went to Dublin, in Erath County, to sell their cotton, Church-
well having one and witness two bales.   They sold their cotton to St. Clair
& Utterbeck in Dublin, and started home late in the afternoon, Church-
well with a half load of lumber on his wagon.   About a mile and a half
from Dublin they met Mr. Oldham's son Clem, and at a point a short dis-
tance further on their way they met another smooth-faced boy.   They
reached the neighborhood of the old Adams ranch on Sowels Creek, in
Comanche County, about dark.   Churchwell's wagon was then a few yards
in the rear of the witness's wagon.   At this point a man stepped into the
road from behind some trees and ordered the witness to "hold up," cov-
ering witness with his pistol.   About the same time another man stopped
Churchwell in the same manner.   Witness stopped his team, and, as or-

dered by the man, got out of his wagon and stood in the road with his hands uplifted. The other man then marched Churchwell to the point in the road where the witness was standing. The two men, each having his pistol presented, then compelled witness and Churchwell to stand close together with hands uplifted. One of the men then covered witness and Churchwell with his pistol, while the other man searched them. From the person of the witness he took about sixty dollars, being all the money that witness had. From the person of Churchwell he took a pistol. Churchwell had no interest in the witness's money, and the witness had no interest in Churchwell's pistol. Of the money taken from the witness he remembered four silver dollars and a twenty and a ten-dollar currency bill. He did not remember the denomination of the other bills. Each of the robbers wore a piece of cloth covering the face to the eyes. Witness, who was then suffering with sore eyes, did not recognize either of the men.

C. W. Churchwell's testimony as delivered on the examining trial of defendant and A. A. Clark, and read on this trial, was substantially the same as that of Taylor, except that, while declining to testify absolutely to the identity of the Clarks as the men who committed the robbery, he declared it to be his positive belief that the defendant was the man who held the pistol on Taylor and himself, and that A. A. Clark was the man who searched them and took their property. The defendant and A. A. Clark corresponded with the robbers in general appearance, size, and features, so far as the witness was able to distinguish the features of the robbers, and he scrutinized them carefully at the time of the robbery. The place of the robbery was about four miles southwest from Dublin. One of the robbers was clean shaven, and the other wore beard on the face of about a week's growth.

J. L. Newton, the brother-in-law of the defendant, testified for the State that he lived about seven miles north of Dublin, and three miles south of where defendant and A. A. Clark lived. Witness and Satterwhite went to Dublin in a wagon on Saturday, October 6, 1888. He saw defendant and his brother A. A. Clark in Dublin on that day. During the day defendant requested witness to take a barrel of lime for him as far as the witness's house. Witness agreed to do so, and defendant remarked, "If I am in town when you get ready to load the lime I will help you." About sundown witness hunted over town for defendant to help him load the lime, asking for him of several parties, including W. H. Snead, but could neither find nor hear of him.

F. C. Oldham testified for the State that his store house in Dublin was situated on a street which ran north and south. About an hour before sundown on October 6, 1888, the defendant and his brother A. A. Clark, riding horseback, passed the witness's store going north. A short distance north of witness's store they took the street running west, and were

traveling west when witness last saw them. Had they continued going. north they would have gone in the direction of their homes, eight or ten. miles distant. Other witnesses for the State testified, in terms, as did this witness.

Clem Oldham, the son of F. C. Oldham, testified for the State, in. substance, that on the morning of October 6, 1888, he went to his father's. ranch, southwest from Dublin. He returned to Dublin on that evening, traveling the Dublin and Comanche County road, which passed through Dubois's pasture, at a point about one and a half miles from Dublin. In that pasture, and on that road, at about thirty minutes before sunset, he· met two horsemen, one of whom was the defendant. The other man he. did not know. He knew defendant but did not know A. A. Clark. They were traveling west towards Comanche County. Immediaelty after· passing out of the said pasture the witness met two men in separate· wagons, going towards Comanche County. He did not know either Taylor or Churchwell.

J. N. Brown testified for the State that he lived between six and seven. miles north of Dublin. An hour or more after dark on the night of October 6, 1888, the defendant and his brother A. A. Clark, riding horse-back, came to the witness's place. Defendant came into the house for a. minute or two, and then in company with his brother rode off. This witness was corroborated by Miss Mary McClanahan, who then lived at the said witness's house.

A. S. Corbell testified for the State, in substance, that he met the defendant at church on Sunday, the day after the alleged robbery, and paid him ten dollars that he owed him. In putting that money away the defendant exposed a large roll of currency money, and Ike Gibbs, who was present, asked him, "Where in the hell did you get all of that money?" Defendant replied, "I won $35 before breakfast this morning."

John Gerrell testified for the State that on the day succeeding the robbery he went with Taylor to the place where it occurred and examined the ground in the vicinity. Near some trees, a short distance off the· road, the witness found the foot-tracks of two different men. The left heel of each was run down, but one was the track of a neat, high-heeled boot, and the other of a broad-soled, flat-heeled shoe. At the examining· trial the witness closely observed the feet of defendant and A. A. Clark. Defendant wore a neat, high-heeled boot, the left heel being run down.. A. A. Clark wore a broad-soled brogan, the left heel being run down. The boot of defendant and the shoe of A. A. Clark corresponded in size· and shape with the tracks at the place of the robbery, and witness was of opinion that those tracks were made by defendant's boot and A. A. Clark's. shoe.

Other testimony for the State shows that the place of the robbery was. between four and five miles distant from the house of the witness J. N.

Brown, and that the country intervening was open and presented no obstruction to rapid horseback travel. It was also shown that defendant was clean shaved on the day of the robbery, and that at that time A. A. Clark's face was covered with beard of about a week's growth.

The opinion states briefly, but sufficiently, the substance of the testimony of the witness Utterbeck.

Alibi was the defense mainly relied upon. It was supported by a number of witnesses who located the defendant in the town of Dublin at periods ranging from twenty minutes before sundown until dark on the night of the robbery. The majority of the said witnesses, including the defendant himself, located the defendant at dark at Keith's market in Dublin. In order to account for his possession of a large amount of money on the morning succeeding the robbery, as testified by Corbell, the defendant presented several witnesses who testified that at various times, ranging from late in September to the 3d and 4th days of October, they saw defendant with large sums of money in his possession. Defendant himself testified to the payment to him by different parties of large sums of money recently before the robbery, and to the further fact that he won as much as fifty dollars on horse races at the Dublin fair within the two or three days preceding the robbery.

In rebuttal the State proved by Newton and Snead that they were at Keith's market about dark, but saw nothing of defendant.

No brief for appellant has reached the Reporter.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. — 1. Appellant's motion in arrest of judgment based on the supposed insufficiency of the indictment was properly overruled. It sufficiently charged the crime of robbery under our statute and decisions. Penal Code, art. 722; Willson's Crim. Stats., sec. 1248.

2. Appellant was alone indicted in this prosecution for the robbery, but the evidence disclosed most fully, as we think, that his brother, one A. A. Clark, was a joint and principal offender with him, acting with him prior to, at the time of, and subsequent to the commission of the crime. Both parties were arrested and tried before an examining court for the crime. Appellant's first bill of exceptions, reserved at his final trial in the District Court from which this appeal was taken, shows that the prosecution proposed to prove by one Prewitt that about ten days after the robbery he, Prewitt, arrested the defendant's brother, the said A. A. Clark, and found upon and took from the person of the latter a pistol, which Churchwell, one of the parties robbed, identified on the examining trial as the pistol taken from him by the robbers. A pistol was by the indictment alleged to have been taken from the injured parties,

together with other property, at the time of the robbery. Defendant's objection to this testimony was that at the time the pistol was found upon A. A. Clark the conspiracy, if any, and the crime had been consummated. Whilst it is a well established rule that the acts, conduct, and declarations of one co-conspirator subsequent to the consummation of the conspiracy, are inadmissible as evidence against another conspirator, such rule has never been extended so as to exclude evidence of the subsequent finding of the fruits of the crime in the possession of one of the co-conspirators, whose complicity in the perpetration of the crime has been fully established. It is a circumstance of the most potent character in the identification of the parties, and "any fact or circumstance which would tend to prove the guilt of the co-defendant, would also tend to prove the guilt of the defendant, and would be admissible against him." Pierson v. The State, 18 Texas Ct. App., 524, is directly in point upon the question as here presented. See also Jackson v. The State, *ante*, p 143. This testimony was legal and admissible, but defendant's bill of exceptions shows that his objection to the evidence was sustained by the court, and the witness was not permitted to testify to the fact. Under such circumstances we are at a loss to know why defendant's counsel have preserved the bill, and of what they can complain with reference to the matter.

3. The same may be said of defendant's second bill of exceptions. On objection of defendant to the proposed testimony of Satterwhite as to matters told him by the witness Charley Clark—because hearsay—the objection was promptly sustained, and Satterwhite was not permitted to testify. As to the witness Charley Clark, he denied most positively that his brothers at their examining trial had told him of the whereabouts of the pistol, and denied that he had gone to the place of its concealment, found it, and carried it away. If the prosecution had reason to believe that the defendants had so informed Charley Clark, and had induced him to go and get the pistol, and take it away, the State's counsel had the undoubted right to question him upon the subject. If the weapon, being fruits of the crime, had been found by the witness at the place, and upon the information derived from the defendants, the evidence was admissible, though defendants were in arrest at the time they gave him the information. The prosecution had the right, and it was proper, to question the witness upon the matter, and even if the court, upon the objections of defendant's counsel, had erroneously refused to allow the questions to be asked, the refusal would not be subject to criticism in this court. McDowel v. State, 90 Ind., 321.

4. The State's witness Williams was permitted to testify, over objections of defendant, that two days after the robbery he went to the scene of the crime with Taylor, one of the parties robbed, and others, and there examined the foot-prints or tracks around and about the spot, which tracks

he described; that afterwards he, the witness, was present attending the examining trial of defendants, and noticed the boots of defendant and the shoes of his brother A. A. Clark, then also on trial, and that *in his opinion* the tracks made at the place of the robbery corresponded with and were made by the boots and shoes of defendant and said A. A. Clark. This testimony was objected to as inadmissible, because it was merely *the opinion* of the witness, and that opinion is not admissible as evidence.

In his standard work on Criminal Evidence, that eminent law writer Mr. Wharton says the true line of distinction is this: An inference necessarily involving certain facts may be stated without the facts, the inference being an equivalent to a specification of the facts, but when the facts are not necessarily involved in the inference (e. g., when the inference may be sustained upon any one of several distinct phases of fact, none of which it necessarily involves), then the facts must be stated. In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given subject to cross-examination as to the facts upon which it is based. Opinion as far as it consists of a statement of an effect produced on the mind becomes primary evidence, and hence admissible whenever a condition of things is such that it can not be reproduced and made palpable to the jury." Whart. Crim. Ev., 9 ed., secs. 458, 459. See also Powers v. The State, 23 Texas Ct. App., 43. In The State v. Reitz, 83 N. C., 633, it was held that opinion as to correspondence of foot-prints with shoes is admissible.

The almost identical question here raised came before this court in the case of Thompson v. The State, 19 Texas Ct. App., 594: "A State's witness having described the peculiarity of a certain track seen by him at the place of the homicide, was permitted, over objection, to testify that thereafter, at the examining trial, he saw on the foot of one of the defendant's alleged accomplices a boot which would have made such a track as the one he saw at said place," and the evidence was held admissible.

5. In our opinion there is no merit in defendant's third and fourth bills of exceptions relative to the reproduction of the testimony of C. W. Churchwell, which had been reduced to writing upon the examining trial, the witness having subsequently died. The justice of the peace was properly permitted to state the circumstances attendant upon the taking of the deceased witness's testimony, and to identify the same. As to the objection that the justice's certificate attached to said written testimony is insufficient, it seems that no particular form for such certificate is prescribed by law, and in our opinion the certificate of the justice in this instance, as shown in the record before us, is sufficient. Golden v. The State, 22 Texas Ct. App., 1; Kirby v. The State, 23 Texas Ct. App., 13; O'Connell v. The State, 10 Texas Ct. App., 567; Kerry v. The State, 17 Texas Ct. App., 178; Willson's Crim. Stats., sec. 2535; Code Crim. Proc., arts. 267, 774. The testimony of the deceased witness Churchwell, as

taken and reduced to writing, was properly admitted as legal evidence in the case.

6. Defendant's sixth bill of exceptions relates to supposed defects and omissions in the charge of the court to the jury. None of these objections are maintainable. Robbery was defined literally in the language used in the Code (Penal Code art. 722); and as for the punishment, the learned trial judge might well, in view of the facts proved on the trial, have added to the definition the latter clause of said article 722, and thereby emphasized the crime denounced where two or more persons are acting together using and exhibiting firearms and deadly weapons in the accomplishment of their purpose. Correct rules with regard to circumstantial evidence were clearly announced.

But it is insisted that "the court failed to charge the jury that if the proof showed that the pistol was taken from the person and possession of Churchwell alone, and that the money was taken from the person and possession of Taylor alone, and that Taylor had no interest or property in the pistol, and Churchwell had no interest or property in the money (and this was the uncontroverted proof in the case), then the jury should acquit the defendant, because such proof would not sustain the allegation in the indictment that said property was taken from both Churchwell and Taylor." The allegation in the indictment was that the pistol was the property of and was taken from the person and possession of Churchwell, and the money was alleged to be the property of and to have been taken from the possession of Taylor. These allegations as to ownership and possession were specifically proved as alleged, and the charge of the court conformed the law to the allegations and proof. In robbery "the indictment may charge the defendant in the same count with felonious acts with respect to several parties, as with having assaulted A and B, and stolen from A one shilling, and from B two shillings, if it was all one transaction." 1 Bish. Crim. Proc., 3 ed., sec. 437; 2 Bish. Crim. Proc., sec. 60.

7. After the jury had been out a day and night considering of their verdict they sent word to the court by the officer in charge of them that they could not agree. The presiding judge had them brought into the court room, and stated to them that he did not intend to discharge them, and that he did not think they had sufficiently considered of the case. The statute makes it a matter of discretion with the court as to whether it will discharge a jury because they have been kept together such a time as to render it altogether improbable that they can agree. Code Crim. Proc., art. 701; Willson's Crim. Stats., sec. 2390. Such discretion is not revisable in this court unless it has been abused.

8. Defendant's eighth bill of exceptions complains that the court permitted the testimony of the deceased witness Churchwell, taken at the examining trial, to be re-read for the third time to the jury after they

had been in retirement considering of their verdict two days and nights. Explaining this bill the learned judge says: "The reading of Churchwell's testimony was upon the request of the jury to the court, their statement being that they differed as to what Churchwell had testified. The court thereupon caused the reading, as above stated, it having once before upon a similar request been read after the charging of the jury." We have no statute expressly providing for the reading of the written testimony or deposition of a witness where the jury have disagreed as to such testimony. When the witness has testified orally, he can be recalled to the stand and directed to detail his testimony again to the jury as to the particular point of disagreement, and no other. Code Crim. Proc., art. 697. Where the evidence is by deposition, or in writing, taken on examining trial, we can see no good reason why, if the jury so desire, they can not have it re-read to them where they have disagreed about it. Such written testimony can not be easily altered.

At all events it is to be presumed that it has not been altered until the contrary is shown, and where this is not done we can not perceive how its being re-read in the same identical language could mislead the jury, or unjustly prejudice the defendant. We are unable to see that any error has been committed or wrong done the defendant in this regard, as the same appears in the bill of exceptions.

9. Defendant's eleventh bill of exceptions complains that the court permitted one Utterbeck to testify, over defendant's objections, that three or four hours before the robbery, whilst he, witness, was paying to the prosecuting witness Taylor, at a desk in witness's store, $125, A. A. Clark, defendant's brother, and the one who was implicated with him in the robbery, was present in the store within seven or eight feet of Taylor, and could have seen the money paid. Objection to this testimony was that at the time of the money transaction between Utterbeck and Taylor, the defendant was not present, and there was no conspiracy or common design at that time between defendant and A. A. Clark to commit the robbery, and that no circumstance connected with, or act or conduct of, A. A. Clark before the conspiracy was entered into between him and defendant was, or should be admitted as competent evidence against defendant.

"When two or more persons combine or associate together for the prosecution of some fraudulent or illegal purpose, the acts and declarations of any one of them made in furtherance of the common purpose, and forming a part of the *res gestæ*, are admissible as evidence against the others; otherwise, however, as to subsequent acts, admissions, or declarations. * * * In regard to the admission of the acts and declarations of one conspirator as original evidence against each member of the conspiracy, substantially the same rule applies in criminal as in civil cases. The principle on which the acts and declarations of other conspirators,

and acts done at different times, are admitted in evidence against the person prosecuted, is that by the act of conspiring together the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design, thus rendering whatever is said or done by any one in furtherance of that design a part of the *res gestæ*, and therefore the acts of all." 4 Am. and Eng. Encyclopædia of Law, 631, 632. As between conspirators, antecedent acts and declarations of each, pending and in pursuance of the common design, and tending to throw light upon its execution, or upon the motive or intent of its perpetrators, are competent evidence against each and all of them. Cox v. The State, 8 Texas Ct. App., 256. And where a conspiracy has been proved, as we think was most clearly done in this case, sayings and movements of other conspirators before the perpetration of the crime are admissible against the defendant, though occurring in his absence. Williams v. The State, 24 Texas Ct. App., 17; Anarchist Cases, Ill., 12 N. E. Rep., 865; McKee v. The State, Ind., 12 N. E. Rep., 510.

In this case the fact that A. A. Clark saw Taylor receive the money is a strong circumstance tending to show that if he was not there to ascertain that very fact in furtherance of a conspiracy already formed to rob him, that the defendant did know of the receipt of the money by Taylor, and that that knowledge induced him to enter into the plan already determined upon by his brother A. A. Clark to rob Taylor. But, as intimated above, the evidence tended to show that a conspiracy already existed between the brothers to rob Taylor, and A. A. Clark, as part of the plan, might have entered the store to assure himself of the fact that Taylor had received the money. It was a circumstance going to show motive for the conspiracy. It was a circumstance that the jury had the right to consider in connection with the other facts, and the court did not err in admitting said evidence.

We have considered all the questions raised in this case, and have been constrained to decide each and every one adversely to appellant. We are of opinion that the record does not disclose any error prejudicial to his legal rights, and therefore the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.