

# In the Court of Criminal Appeals of Texas

---

No. PD-1035-20

---

VINCENT DEPAUL STREDIC,

*Appellant,*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Fourteenth Court of Appeals
Harris County

---

YEARY, J., filed a concurring opinion in which SLAUGHTER, J., joined.

I am less sure than the Court that submitting a transcript of the disputed testimony in this case was impermissible under Article 36.28

of the Texas Code of Criminal Procedure. Majority Opinion at 13; TEX. CODE CRIM. PROC. art. 36.28.[1] The Court fails to address the State's substantial argument that the history of the statute favors a construction of the statute different from the Court's. And I cannot agree with the Court's suggestion that submitting a transcript of the disputed testimony constituted an impermissible comment on the weight of the evidence. Because the transcript was both accurate and responsive to the jury's certified dispute, and because the jury expressly requested the transcript, I cannot conclude that it was a comment on the weight of the evidence at all, much less an impermissible comment on the trial court's part. Majority Opinion at 14.

I do agree, however, that any error was harmless in this case, if not for the reasons the Court articulates, Majority Opinion at 14–18, then for a much more fundamental reason. Because the transcript was both accurate and responsive to the dispute, and because the jury expressly asked to have it, submitting it to the jury could not have adversely affected Appellant's substantial rights, in my view, and for that reason alone, any error in submitting it to the jury must be

---

[1] Article 36.28 currently reads:

In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used at trial.

TEX. CODE CRIM. PROC. art. 36.28.

disregarded. Tᴇx. R. Aᴘᴘ. P. 44.2(b). On these bases, I concur in the result.

## I.     The Current Statute

Article 36.28 describes what a jury "may" obtain to settle a disagreement about a witness's statement. Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 36.28. It does not, at least on its face, even purport to speak to the range of permissible responses to that dispute that a trial court *must* make. It explains that the jury "may, upon applying to the court, have read to them from the court reporter's notes" the testimony in dispute. *Id*. The statute simply does not say *who* must necessarily read to the jury from the court reporter's notes, where the reading of those note must necessarily  take place, or even how many times the notes may or may not be read or re-read. Contrary to the view taken by the Court, the statute seems to me to vest quite a bit of discretion in the trial court to determine how to carry out its duty. Does a trial court in fact lack discretion, then, even to send a transcript of the disputed testimony to the jury room and direct the foreperson to read it aloud? Would this really fail to satisfy the statute?

The Court says that Article 38.26 is so explicit about the "when," "what," and "how" of the procedure—the "preconditions" for responding to a jury dispute—that it must be regarded as binding and exclusive. Majority Opinion at 13. The Court expresses concern that, were it otherwise, trial courts would have unfettered discretion to ignore the prerequisites for a jury to obtain a readback of witness testimony, such as that the jurors must actually have a *dispute* about it. *Id*. Or a trial court could, with impunity, have the court reporter also read back other

testimony *not* in dispute; or bring the witness back to testify in person even though the court reporter's notes are readily available. *Id*. These concerns seem utterly unfounded to me.

These "when" and "what" restrictions have always been in the statute, essentially unchanged; whereas, the "how" has undergone revision over the years. And this Court has always regarded various trial court innovations and improvisations with respect to the "how" of the procedure with a high degree of tolerance, mindful of the exigencies of individual cases. This history causes the State to believe—with more than a little justification—that a trial court should not necessarily be bound in its response to a jury dispute to the particular "how" methods that the Court seems now to prefer; that there is, in short, some judicial wiggle room in the language of Article 36.28. And its argument seems to have some support both in the history and in the text of the law.

## II.     The History of Article 36.28

The starting point for determining statutory meaning is to examine both the literal text and its context; and part of the statutory context includes the history of the statute in question. *Timmons v. State*, 601 S.W.3d 345, 348, 354 & n.50 (Tex. Crim. App. 2020) (citing Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 256 (2012)). Predecessors to present-day Article 36.28 go all the way back to the so-called "Old Code" of Criminal Procedure of 1857. Article 615 of the Old Code provided that when jurors disagreed about the testimony of a particular witness, they could apply to the trial court to have that witness brought back on the witness stand "to detail" his testimony as to the subject of the disagreement "and no other;" and to

do so in the same language as he had testified "as nearly as he can."[2] This original provision spelled out no *other* process for revisiting disputed testimony; nor did it address what a trial court should do in case the witness has become unavailable since he testified.

The statute was recodified in subsequent Codes without substantive change, in 1879 (Article 697), 1895 (Article 735), 1911 (Article 755), and 1925 (Article 678). Not until 1953 was then-Article 678 of the 1925 Code of Criminal Procedure amended so that, for the first time, it expressly provided that read-back of the court reporter's notes should be the principal and preferred method for resolving a jury disagreement, and that witness recreation of testimony in open court "as nearly" as possible is now the fallback method. Acts 1953, 53rd Leg., ch. 373, § 1, eff. June 8, 1953.

Up until the 1953 amendment, trial courts often had to improvise, especially when confronted with witnesses about whose testimony the jury disagreed who were no longer available to reproduce their testimony in person. In *Clark v. State*, 28 Tex. App. 189, 12 S.W. 729 (1889), the witness had actually died before trial, and his deposition

---

[2] As originally enacted, and as it substantively remained until 1953, Article 615 of the Old Code read:

> If the Jury disagree as to the statement of any particular witness, they may, upon applying to the Court, have such witness again brought upon the stand, and he shall be directed by the Judge to detail his testimony in respect to the particular point of disagreement, and no other; and he shall be further instructed to make his statement in the language used upon his examination as nearly as he can.

Old Code art. 615 (1857).

testimony was read to the jury. When, during protracted deliberations, the jurors wanted to hear this testimony read again, the trial court permitted it. The Texas Court of Appeals (this Court's predecessor) upheld that ruling, observing:

> We have no statute expressly providing for the reading of the written testimony or deposition of a witness when the jury have disagreed as to such testimony. When the witness has testified orally he can be recalled to the stand, and directed to detail his testimony again to the jury as to the particular point of disagreement, and no other. Code Crim. Proc. art. 697. Where the evidence is by deposition in writing, taken on examining trial, we can see no good reason why, if the jury so desire, they cannot have it reread to them when they have disagreed about it. Such written testimony cannot be easily altered, and, at all events, it is to be presumed that it has not been altered until the contrary is shown, and where this is not done we cannot see how its being reread in the same identical language could mislead the jury or unjustly prejudice the defendant. We are unable to see that any error has been committed, or any wrong done the defendant in this regard, as the same appears in the bill of exception.

*Clark*, 28 Tex. App. at 197, 12 S.W. at 731–32. In *Clark*, the situation was not actually governed by Article 697, since it did not involve the reproduction of oral testimony. *See also Orner v. State*, 78 Tex. Crim. 415, 421–22, 183 S.W. 1172, 1175 (1916) (in a case also involving the read-back of prior testimony that had been introduced during trial, this Court followed *Clark* to hold that "no reversible error is shown"). But in the following decades, this Court relied on *Clark* to approve of the read-back of court reporter's notes even in cases involving jury disputes about *oral* testimony, notwithstanding the fact that this method of resolving jury disagreement was not then mentioned in the statute.

In *Gandy v. State*, 97 Tex. Crim. 334, 334–35, 261 S.W. 145, (1924), the jury applied to the trial court to have read back the testimony of a witness who was no longer available to reproduce his testimony from the witness stand, in strict accordance with the statute. Over the appellant's objection, the trial court allowed the court stenographer to read back the testimony in dispute, and the appellant complained about it on appeal. *Id*. Rejecting this complaint, the Court observed:

> [Then-]article 755, providing for the reproduction of the testimony of a witness by letting him repeat his former testimony, was enacted before the use of stenographers became general, and before the court stenographer became an officer of the court. It is believed that the procedure followed was in substantial accord with article 755, C.C.P., supra. If, however, the procedure followed was not within the purview of the statute mentioned, it was within the inherent power of the court to have the court reporter read, in the presence of the court, the appellant, and his counsel, the official record of the testimony in question. Moreover, there is no claim that in the stenographer's reproduction of the testimony there was any inaccuracy or departure from the testimony of the witness, given upon the stand, and which he would have given, had he been called. Under the circumstances, there is an absence of injury, and a reversal should not result from the action taken.

*Id.*, 97 Tex. Crim. at 335–36, 261 S.W. at 146.

In the ensuing years, this Court relied on *Gandy* to deflect similar claims of error in failing to follow the exact dictates of the statute— sometimes somewhat summarily, as in *Woods v. State*, 10 S.W.2d 90 (Tex. Crim. App. 1928). There, the jury had also expressly requested that the stenographer's notes be read back to them, and the Court simply observed that "[t]he reading of the stenographer of his notes was, under the circumstances, upheld in Gandy's Case[.]" *See also Box v.*

*State*, 27 S.W.2d 538, 539 (Tex. Crim. App. 1930) ("Under certain circumstances, the reading of the stenographer's notes in open court in the trial of a case has been given sanction by this court.") (citing *Gandy* as well as a pre-*Gandy* case, *Byrd v. State*, 90 Tex. Crim. 418, 423–24, 235 S.W. 891, 893–94 (1921), in which the read-back of the stenographer's notes to settle a jury dispute was treated as, if not routine, then at least unremarkable).

In *Moore v. State*, 99 S.W.2d 915 (Tex. Crim. App. 1936), the jury sought to rehear testimony from a witness who had been excused and had returned to his home in a nearby county. Rather than try to retrieve the witness, the trial court had the official court reporter read back the disputed testimony from his shorthand notes. *Id.* at 916. Relying on the statute as well as *Gandy*'s construction of it, this Court simply declared that "Appellant's objection to the procedure in question was properly overruled." *Id.* And an even greater departure from the literal language of the statute came in *Cranfill v. State*, 235 S.W.2d 146 (Tex. Crim. App. 1950). There, the Court concluded that, in allowing the jury to resolve its dispute with respect to the testimony of a released witness by listening to a tape recording of the testimony in issue, "[t]he careful trial court seems to have followed the rule laid down in [then-]Art. 678, Vernon's C.C.P." *Id.* at 147.

And in a pre-1953-amendment case that the State contends is very close on point to the present case, the trial court actually sent a transcript of an absent witness's disputed testimony "into the jury room[.]" *Miller v. State*, 79 S.W.2d 328, 330 (Tex. Crim. App. 1935). As in *Clark*, the witness in *Miller* had not actually testified in person at

trial, but a transcript of his testimony from the examining trial was admitted during the State's case. *Id*. at 329. The jury then requested to see the transcript during its deliberations, over the appellants' objection that "the jury should have been brought into open court and the same should have been given to the jury in open court." *Id*. at 330. In declining to reverse the conviction for this alleged violation of the statute, this Court observed:

> It occurs to us that under [then-]article 678, C.C.P., the jury, if they disagree as to any statement of the witness, could apply to the court to have such witness recalled and have him repeat his testimony on the disputed point, or, in case he was not available, to have his testimony reproduced by the court reporter. While the matter may not have been exactly regular, yet no injury is shown to have resulted to the appellant. If the court had brought the jury into the courtroom and the testimony had been read to them by the reporter, such action would have been in compliance with article 678, C.C.P. The mere fact that the court at the request of the jury permitted the transcript to go into the jury room to be read by the jury themselves would in and of itself not be reversible error, unless the appellants could show some injury to themselves by said action of the court. No injury being shown as a result of such action, it occurs to us that the bill of exception fails to show such error as would require a reversal of this case.

*Id. Miller* differs from the instant case insofar as it involved submitting a transcript to the jury of testimony that had already been presented in written form during the trial itself, rather than submitting a transcript of oral testimony from trial. Most remarkable about the opinion is its assertion that to have read the testimony in open court "would have been in compliance with" the statute, *id*., even though that procedure for resolving jury disputes does not conform to the literal parameters of the

statute as it then existed.

In 1953, the Legislature formally adopted that procedure—reading a transcript of the oral testimony from trial—as the preferred judicial response to a jury certification that it disagrees about a witness's testimony as to a certain matter. The original procedure of recalling the witness to the stand to reconstruct his trial testimony as closely as possible was now made the secondary procedure, to be used only in the event that "there be no [court] reporter, or if his notes cannot be read to the jury[.]" Acts 1953, 53rd Leg., ch. 373, § 1, eff. June 8, 1953. The 1953 amendment to codify the readback procedure shows more than just a legislative tolerance for this Court's past judicial improvisations. It adopted an innovation that this Court had approved as the preferred method for addressing jury disputes, which innovation was then re-codified in the 1965 Code of Criminal Procedure. Acts 1965, 59th Leg., vol. 2, ch. 722, p. 317, eff. Jan. 1, 1966.

### III.   The State's Argument

From this history, the State argues that it would be inappropriate to suddenly begin to construe the statute to flatly prohibit further innovation, such as submitting an accurate and responsive transcript of the disputed testimony (as was done in *Miller*—albeit not a transcript of oral testimony, but of examining trial testimony that was submitted to the jury during the course of trial). The State argues at length that the statute's history serves as a context from which it should be apparent that it has never been, and therefore should not now be, construed to bar other methods of responding to a jury disagreement. State's Brief at 24–33. And, indeed, in *Gandy*, this Court observed that, even if the trial

court lacked authority under the statute to have the court reporter read his notes back to the jury to resolve a disagreement, it was nevertheless "within the inherent power of the [trial] court" to do so. *Id*. at 28 (quoting *Gandy*, 97 Tex. Crim. at 336, 261 S.W. at 146).[3] Given this history, the State argues, we should not interpret the lack of explicit authorizing language in Article 36.28 to prohibit trial courts from pursuing appropriate innovations.  The Court does not address this substantial argument.

## IV.    Did the Trial Court Violate the Law?

I am not as sure as the Court is that the literal terms of the present statute were not followed in this case. Texas Code of Criminal Procedure Article 36.28 explains that a jury "may, upon applying to the court, have read to them from the court reporter's notes" the testimony in dispute. TEX. CODE CRIM. PROC. art. 36.28. Undoubtedly, by giving the

---

[3] "[A] court may take a particular action only if that action is authorized by constitutional provision, statute, or common law, or the power to take the action arises from an *inherent* or implied power." *State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991) (emphasis added; internal footnote omitted).

In a footnote, the Court contends that I rely upon *Gandy* to support my position. Majority Opinion at 14, n.32. In fact, I rely first-and-foremost upon the text of the statute itself. Unlike the Court, I observe the statute to plainly afford a range of discretion in determining how to effectuate the jury's statutory right to "have read to them from the court reporter's notes" the testimony in dispute. TEX. CODE CRIM. PROC. art. 36.28. While I do not necessarily endorse *Gandy*'s view that it would be within the "inherent" power of a trial court to act in a way that is contrary to plain statutory dictates, I do regard *Gandy* to be emblematic of the Court's long history of reading the statute to afford a trial court fairly broad discretion in fashioning an appropriate Article 36.28 response. After all, before discussing the trial court's "inherent" power, the Court in *Gandy* first declared that the procedure followed in that case was "in substantial accord" with the statute as it read at that time, though it obviously did not follow the statutory procedure to the letter. 97 Tex. Crim. at 336, 261 S.W. at 146.

jury a transcript of the court reporter's notes, the trial court ensured that the members of the jury would "have read to them . . . that part of such witness testimony or the particular point in dispute, and no other." *Id.* Nothing in the statute says: (1) *who* must do the reading, (2) *where* the reading must be done, or (3) *how many times* the jury may have the testimony read to them. *Id.* Thus, the statute at least arguably does not preclude the circumstances presented in this case *at all*: the disputed testimony seems to have been read to the jury, by the jurors themselves, in the room in which their deliberations took place, as often and as carefully as they believed was necessary to resolve their dispute.

## V. Harmless Error

In any event, also considering the history of the Court's past applications of Article 36.28 and its predecessors, I am convinced that any error in failing to follow the exact letter of the statute in this case did not affect Appellant's substantial rights. Acceding to a jury's express wish for an accurate transcript of only the testimony the jury has indicated it has a dispute about is actually the best possible way to implement the manifest purpose of the statute, and if it is nevertheless error to do so because the statute does not *expressly* authorize it, that error cannot be thought to affect a defendant's substantial rights.

Violations of Article 36.28 are not constitutional in nature, so this Court has said that Rule 44.2(b) applies, under the terms of which an appellate court must "disregard" any error that cannot be said to affect the substantial rights of the defendant. *Thomas v. State*, 505 S.W.3d 916, 925 (Tex. Crim. App. 2016). The Court has also said that Article 36.28 "seeks to balance our concern that the trial court not comment on

the evidence with the need to provide the jury with the means to resolve any factual disputes it may have." *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005). As far as I am concerned, when a trial court submits an accurate and responsive transcript of the testimony of a witness—about which the jury has certified a disagreement, and where the jury itself has expressly requested the transcript—the trial court's action does not skew the balance in any way against the defendant.

There can be no greater means for the jury to resolve a disagreement about the testimony of a particular witness than to provide it with an actual transcript of the testimony pertaining to the particular matter it has certified to be in dispute. So long as all parties agree that the transcript accurately reflects what the testimony was, and that it is responsive to the disagreement certified, it offers an optimal means of addressing the jury's need to faithfully revisit the witness's statement.[4] It will also, hopefully, have the added benefit of settling the dispute, which is without question the evident purpose of Article 36.28 in the first place. *See* TEX. CODE CRIM. PROC. art. 36.28 (providing procedures that the jury or a court "*may*" employ "if the jury

---

[4] In making its "structural error" argument, the dissent maintains that, unless the court reporter reads the transcript aloud to the jury in open court, the parties will be unable to correct any errors the court reporter may make in reading it. Dissenting Opinion at 3. This seems a rather circular argument. If the court reporter does not read the transcript aloud, and the jury is instead permitted to read the transcript for itself, then there can be no occasion for the court reporter to misread it in the first place, and nothing for the parties to object to in the courtroom. Moreover, should a transcript delivered to a jury pursuant to Article 36.28 *incorrectly* reflect the testimony that was given at trial, then that would provide an independent ground upon which to object that would go beyond any concern about the procedure chosen by the judge for effectuating the jury's statutory right under that article.

disagree as to the statement of any witness") (emphasis added).

On the other side of the balance, simply providing the jury with a cold transcript of the disputed testimony minimizes any concern about judicial intervention that might tend to suggest some view of the evidence the judge thinks the jury should take. As the prosecutor in this case observed, this is particularly so when it is the jury itself that has explicitly requested to be provided with a transcript. Under these circumstances, the judge has not foisted a selected excerpt upon the jury in such a way as to suggest that the judge has any opinion about the proper resolution of the jury's disagreement. He has simply acceded to the jury's explicit request. Moreover, for the trial court to give the jury exactly what it requested (where it is otherwise appropriate to do so under the conditions of the statute) calls no undue attention to particular testimony the jury has not manifestly focused on anyway, and it cannot (contrary to the Court's suggestion today) constitute a judicial comment on the weight or importance of that evidence.

## VI.   Conclusion

I would conclude that the trial court's actions in this case have not been shown to be in violation of the statute. I would also conclude that, under these circumstances, submitting an accurate and responsive transcript—even if it did exceed the trial court's authority to do so under the strict language of the statute (and I reject the Court's conclusion that it did)—cannot possibly have compromised the substantial rights of the defendant. It cannot, therefore, be deemed to be reversible error under Rule 44.2(b).

I respectfully concur in the result.

**FILED:**                     May 11, 2022
**PUBLISH**